# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1097

_____

| | | |
|---|---|---|
| Tamrat Tademe, | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota |
| Saint Cloud State University, | * | |
| | * | |
| Defendant-Appellee. | * | |

_____

Submitted: October 11, 2002

Filed: May 15, 2003

_____

Before McMILLIAN, BOWMAN, and SMITH, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Tamrat Tademe ("Tademe") appeals from an order entered in the District Court[1] for the District of Minnesota granting summary judgment in favor of Defendant, Saint Cloud State University ("SCSU"), on his claims of employment discrimination on the basis of race, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e. See Tademe v. Saint Cloud State Univ., Civ. No. 00-1725 (D. Minn. Dec. 10, 2001)

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

(hereinafter "slip op."). For reversal, Tademe argues that the district court erred in holding that his employment discrimination claims were barred by the statute of limitations. Tademe also argues that there are genuine issues of material fact in dispute as to his hostile work environment and retaliation claims. For the reasons discussed below, we affirm the judgment of the district court.

## JURISDICTION

Jurisdiction in the district court was proper based on 28 U.S.C. § 1331. Jurisdiction in this court is proper based on 28 U.S.C. § 1291. The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(a).

## BACKGROUND

In 1991, Tademe, a black Ethiopian, obtained a probationary tenure track position as an assistant professor in the Department of Human Relations and Multicultural Education, in the College of Education at SCSU. The published educational requirements for the tenure track position included a master's degree, but not a doctoral degree. At the time Tademe was hired, he possessed a Master of Arts in Public Affairs and was a Ph.D. candidate at the University of Minnesota. In his application for the position, Tademe stated that he intended to complete his Ph.D. in 1991. Although Tademe maintains that there was no university policy requiring faculty to complete a doctoral degree, Tademe's contract with SCSU stipulated that his academic tenure would be conditioned upon completion of his Ph.D. Tademe further claims he was told he could not apply for tenure before completing his Ph.D., even though white colleagues were promoted to full professor without a doctoral degree.

Tenure track faculty at SCSU are reviewed for tenure in their fifth year of teaching. Tademe requested tenure in 1996, despite the fact that he had not yet

completed his Ph.D. SCSU denied his request, and Tademe received a notice of non-renewal effective May 1997. In February 1997, Tademe and his union entered into a grievance settlement with SCSU providing an automatic grant of tenure to Tademe if he completed his Ph.D. by September 1997. In addition, Tademe was given paid leave for the spring quarter of 1997 and, if necessary, unpaid leave in the 1997-1998 academic year to work on his doctorate.[2] Tademe completed his Ph.D. in 1997 and was granted tenure that same year.

Although Tademe ultimately obtained tenure and was promoted to associate professor in 1998, he maintains that his promotion and salary schedules were negatively affected by discrimination. Tademe claims that in 1991 Suellyn Hoffman ("Hoffman"), a white co-worker who was hired as an associate professor the same year as Tademe, went to an administrator and had Tademe's salary rank lowered when she discovered that their salary would be the same. Tademe claims that he did not learn of the discrepancy until 1998, when he also learned that three other black faculty members believed they were paid lower salaries due to their race. In 1998 and 1999, Tademe complained about his salary to Dean Joane McKay and President Bruce Grube, arguing that he was initially placed incorrectly on the salary grid. According to Tademe, Grube promised that he would raise Tademe's salary. At Grube's request, McKay performed an evaluation to determine whether Tademe's salary had been properly advanced according to his placement on the grid, but she did not investigate whether Tademe's initial placement was proper. Ultimately, Tademe did not receive a raise in salary. Tademe also claims that in 2001 he was denied promotion to full professor due to discrimination. Although Tademe concedes that he failed to submit his portfolio by the correct deadline, he maintains that he was unable to do so due to health problems and that white faculty members in similar circumstances received deadline extensions.

_____

[2]SCSU previously granted Tademe a year of paid leave in 1993 to work on his doctorate, but he did not complete his Ph.D. at that time. Slip op. at 2.

Tademe also claims that SCSU retaliated against him for engaging in conduct protected by Title VII. Tademe participated in a number of activities in support of faculty and student civil rights, including founding a caucus for faculty and staff of color, acting as advisor to a student group that opposed policies they considered racist, and participating in public protests. Tademe believes that SCSU retaliated against him by: (1) inaccurately evaluating his performance negatively; (2) falsely accusing him of harassing or intimidating faculty and students; (3) threatening him with violence; (4) telling him to take Prozac; (5) ridiculing him at faculty meetings; (6) advising students to distance themselves from him; (7) calling him "irrational"; (8) entering his office without permission; (9) monitoring his computer use and e-mail; (10) interfering with his participation at national conferences; (11) threatening him with disciplinary action; (12) having him arrested for participating in a public protest; and (13) providing false information to the police and paying the police to arrest him and others at a protest.

On June 3, 1999, Tademe filed an Equal Employment Opportunity Commission ("EEOC") charge against SCSU. Tademe received a right to sue letter on April 29, 2000. On July 21, 2000, Tademe filed a complaint in federal district court against SCSU for racial discrimination and retaliation in violation of Title VII. In his complaint, Tademe argued that: (1) SCSU discriminated against him on the basis of race in tenure, salary, and promotion; (2) SCSU maintained a hostile work environment; and (3) SCSU retaliated against him for engaging in protected activity.

On December 10, 2001, the district court granted SCSU's motion for summary judgment, holding that Tademe's claims for discrimination on the basis of race in tenure, promotion, and salary were all barred by the statute of limitations for Title VII, 42 U.S.C. § 2000e-5(e)(1). Slip op. at 6-9. Under Title VII, an aggrieved party must file an EEOC complaint within 180 days following the alleged unlawful employment action. Id at 6. The filing deadline is extended to 300 days in cases

where the employee first initiates proceedings with a state or local agency.[3] 42 U.S.C. § 2000e-5(e)(1). The district court held that Tademe's discrimination in tenure claim was barred because the claim accrued when SCSU first notified Tademe in 1991 that his tenure would be conditioned upon completion of his Ph.D. Id. at 7. The district court also held that Tademe's claim of discrimination in promotion was outside the limitations period because any discriminatory action by SCSU was complete, at the latest, when Tademe received notice of his promotion in early 1998. Id. at 9. Finally, the district court held that Tademe's claim of discrimination in salary was time-barred because even if SCSU had discriminated against Tademe by initially placing him too low on the salary grid, the limitations period began to run when that decision was made in 1991. Id. at 11-12.

The district court also granted summary judgment in favor of SCSU on Tademe's hostile work environment claim, holding that Tademe failed to present a *prima facie* case under Title VII. Id. at 16. Although Tademe established that he was a member of a protected class based on his race and that he was subject to unwelcome harassment, the district court held that Tademe failed to present evidence creating a genuine dispute that he was harassed because of his race or that the harassment he encountered was so severe and pervasive as to violate Title VII. Id.

Finally, the district court granted summary judgment in favor of SCSU on Tademe's retaliation claim. The district court noted that Tademe had frequently engaged in conduct protected by Title VII, including founding the faculty and staff of color caucus, speaking at campus speak-outs, protesting the termination of a Native American professor, and filing an EEOC charge in June 1999. Although Tademe alleged a number of retaliatory actions by SCSU, he emphasized three allegedly adverse employment actions, including physical threats from President Grube, the

---

[3]Because Tademe filed a complaint with the Minnesota Department of Human Rights, he had 300 days following any alleged unlawful employment practice to file an EEOC complaint. See slip op. at 7 n.1 (citing 42 U.S.C. § 2000e-5(e)(1)).

president's decision not to raise his salary, and his arrest by local police during a protest at SCSU's request. The district court held as a matter of law that none of the retaliatory conduct resulted in a material employment disadvantage so as to constitute an adverse employment action. Id. at 26. Specifically, the district court held that Tademe had not shown that the alleged physical threats by President Grube resulted in any adverse change in position, title, or salary. Id. at 26-27. The district court also held that President Grube's decision not to raise Tademe's salary was not an adverse employment action because Tademe's salary did not decrease or otherwise change. Id. at 27-28. Finally, the district court held that Tademe failed to present evidence that SCSU instigated a malicious prosecution or that his arrest resulted in a detrimental change in the conditions of his employment. Id. at 28.

This appeal followed.

DISCUSSION

We review the district court's grant of summary judgment *de novo*. Jeseritz v. Potter, 282 F.3d 542, 545 (8th Cir. 2002); Dorsey v. Pinnacle Automation Co., 278 F.3d 830, 834 (8th Cir. 2002) (Dorsey). "We apply the same standard as the district court and determine whether the record shows that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." Dorsey, 278 F.3d at 834 (citing Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1156 (8th Cir. 1999); Fed. R. Civ. P. 56(c)). We review the evidence and draw all reasonable inferences from the record in the light most favorable to the nonmoving party. Id. at 834-35 (citing Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 775 (8th Cir. 1995)). The nonmoving party, however, bears the burden of "presenting evidence sufficiently supporting disputed material facts that a reasonable jury could return a verdict in [his or her] favor." Jackson v. Ark. Dep't of Educ., Vocational & Technical Educ. Div., 272 F.3d 1020, 1025 (8th Cir. 2001) (citations omitted). If a

-6-

plaintiff cannot adequately support each essential element of his or her claim, summary judgment is appropriate because "a complete failure of proof regarding an essential element of the nonmoving party's case necessarily renders all other facts immaterial." St. Jude Med., Inc. v. Lifecare Int'l, Inc., 250 F.3d 587, 595 (8th Cir. 2001) (citations omitted).

## I. Statute of Limitations

On appeal, Tademe argues that the district court erred by holding that his claims for discrimination in tenure, promotion, and salary were barred by the statute of limitations under 42 U.S.C. § 2000e-5(e). Although Tademe acknowledges that the statute of limitations for a Title VII action is 300 days and begins to run from the date of the violation, he maintains that when a violation is of an ongoing and continuing nature, the statute of limitations begins to run from the date of the last discriminatory act. See Kline v. City of Kansas City, 175 F.3d 660, 664-65 (8th Cir. 1999); Hukkanen v. Int'l Union of Operating Eng'rs Hoisting & Portable, 3 F.3d 281, 285 (8th Cir. 1993) (Hukkanen). Tademe argues that under the continuing violation doctrine, "[a] plaintiff may challenge incidents which occurred outside the statute of limitations period if the various acts of discrimination constitute a continuing pattern of discrimination." Mandy v. Minnesota Min. & Mfg. Co., 940 F. Supp. 1463, 1468 (D. Minn. 1996) (citing Hukkanen, 3 F.3d at 285). Therefore, Tademe maintains that the district court should have treated SCSU's employment decisions as a continuing pattern and practice of discrimination and held that SCSU's entire course of conduct was actionable. See Varner v. Nat'l Super Markets, Inc., 94 F.3d 1209, 1214 (8th Cir. 1996).

After the district court issued its opinion, the Supreme Court limited the continuing violation doctrine in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002) (Morgan). In Morgan, an African-American employee sued his employer (Amtrak) alleging that he was subjected to racially discriminatory acts and retaliation

-7-

and that he had experienced a racially hostile work environment. Morgan argued, and the Ninth Circuit held, that alleged discriminatory acts that occurred outside the limitations period were still actionable under the continuing violation theory "as long as the untimely incidents represent an ongoing unlawful employment practice." Id. at 106-07 (quoting Morgan, 232 F.3d 1008, 1014 (9th Cir. 2000) (additional citations omitted)). The Supreme Court reversed, holding that an "unlawful employment practice" under 42 U.S.C. § 2000e-5(e) refers to discrete discriminatory acts or single occurrences even when related to other acts. Id. at 111. Therefore, the Court held that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" are "not actionable if time barred, even when they are related to acts alleged in timely filed charges." Id. at 114. In other words, each occurrence starts a new clock for purposes of filing charges related to that act, and an employee must file charges within 180 or 300 days (whichever is applicable) of a discrete discriminatory action. Id. at 114-15.

Applying Morgan to the present case, we hold Tademe's claims of discrimination in tenure and promotion were barred by the statute of limitations. Both decisions were discrete acts that constituted separate employment practices. Although Tademe argues that the district court failed to consider that he was asserting a pattern-or-practice of discrimination, Morgan makes clear that the failure to promote, refusal to hire, and termination are generally considered separate violations.[4]

---

[4]To the extent Tademe attempts to state a pattern-or-practice cause of action, his claim also fails. Tademe's evidence is entirely anecdotal and at best shows isolated discriminatory incidents. For example, Tademe claims that three other black faculty members told him that they believed they were paid less than similarly situated white colleagues, yet he fails to present statistics or other evidence to support this assertion. Similarly, the affidavits submitted to show that Tademe and another black faculty member were accused of being incompetent, threatening, and unprofessional are insufficient to establish that SCSU engaged in a pattern-or-practice of discrimination. See EEOC v. McDonnell Douglas Corp., 191 F.3d 948, 952-53 (8th Cir. 1999) (upholding summary judgment in favor of defendant in pattern-or-

Id at 111. ("There is simply no indication that the term 'practice' converts related discrete acts into a single unlawful practice for the purpose of timely filing."). Therefore, the statute of limitations on Tademe's tenure claim began to run in 1996 when SCSU denied Tademe tenure because he failed to complete his Ph.D., even though the effects of that decision were felt much later.[5] See slip op. at 7 (citing Delaware State Coll. v. Ricks, 449 U.S. 250, 256 (1980) (holding that the statute of limitations begins to run at "the time of the *discriminatory acts*, not [at] the time at which the *consequences* of the acts became most painful") (emphasis in original)). Likewise, we agree with the district court that Tademe's claim of discrimination in promotion was time-barred. Any allegedly discriminatory action by SCSU was a discrete act completed when Tademe received notice of his promotion in early 1998.[6]

_____

practice claim where "based on the statistical and anecdotal evidence in the record no reasonable jury could find that [defendant] engaged in a pattern or practice of discrimination").

[5]Tademe argued in the alternative that the statute of limitations on his tenure claim began to run on February 24,1997, when the parties entered into a settlement agreement that required Tademe to complete his doctoral degree as a prerequisite to tenure. Although we believe that Tademe's claim began to run in 1996 when he was denied tenure because he had not completed his Ph.D., we agree with the district court that even assuming that the settlement of February 24, 1997, started a new cause of action, the claim is nevertheless time-barred. See slip op. at 8.

[6]The district court noted that Tademe's complaint and motion opposing summary judgment alleged only one specific act of discrimination in promotion: that SCSU ranked Hoffman as an associate professor when it hired her into a probationary position, whereas Tademe was hired and remained at the lower rank of assistant professor until he was granted tenure. Therefore, the district court presumed that Tademe's failure to promote claim accrued, at latest, in early 1998, when SCSU notified Tademe of his promotion to associate professor. See slip op. at 10 n.2. Tademe argues for the first time on appeal that his most recent request for a promotion in 2001was denied after he failed to submit the application by the deadline due to health problems. Tademe claims that his request for a deadline extension was denied, even though white colleagues in similar circumstances were granted extensions. Because Tademe failed to raise this claim before the district court, we

See Morgan, 536 U.S. at 114. (failure to promote is a discrete act and a charge must be filed within 180 or 300 days after it occurred).

The only claim that Tademe arguably brings within the limitations period is his claim of salary discrimination.[7] Although the recent Morgan decision held that discrete discriminatory acts such as termination, failure to promote, denial of transfer or refusal to hire are complete at the time they occur and start a new clock for the filling of charges, the Court made note of an earlier decision regarding pay discrimination, Bazemore v. Friday, 478 U.S. 385 (1986) (per curiam) (Bazemore). See Morgan, 536 U.S. at 111-12. In Bazemore, the Court held that an employer that paid black employees less than white employees violated Title VII, even though the discrimination began before the statute became effective, because "[e]ach week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII." 478 U.S. at 395. Thus, each allegedly discriminatory paycheck represented a new Title VII violation. Id. This circuit adopted this position as to all pre-Morgan salary discrimination claims in Ashley v. Boyle's Famous Corned Beef Co., 66 F.3d 164, 168 (8th Cir. 1995) (Ashley). In Ashley, we held that a plaintiff's claim of salary discrimination based on sex was a continuing violation, noting "each week's paycheck that delivers less to a woman than to a similarly situated man is a wrong actionable under Title VII." Id. (quoting Bazemore, 478 U.S. at 385). But see Dasgupta v. Univ. of Wis. Bd. of Regents, 121 F.3d 1138, 1140 (7th Cir. 1997) (holding plaintiff's claim of salary discrimination was time-barred because "[t]here were no new violations during the limitations period, but merely a

_____

may not address this claim on appeal. See O.R.S.Distilling Co. v. Brown-Forman Corp., 972 F.2d 924, 926 (8th Cir. 1992) ("A party may not assert new arguments on appeal of a motion for summary judgment.").

[7]The district court held that Tademe's claim of discrimination in salary was also time-barred because the allegedly discriminatory action occurred when SCSU first placed Tademe on the salary grid in 1991. Slip op at 11-13 (citing Dasgupta v. Univ. of Wis. Bd. of Regents, 121 F.3d 1138, 1140 (8th Cir. 1997)).

-10-

refusal to rectify the consequences of time-barred violations"). Although Morgan noted that Bazemore was a pattern-or-practice case which addressed a discriminatory salary structure, it did not overrule or expressly limit Bazemore to pattern-or-practice cases.[8] Therefore, we will assume for the purposes of this analysis that Tademe's claim of salary discrimination was timely because his EEOC charge was filed within 300 days of receiving allegedly discriminatory paychecks.

In order to establish a *prima facie* case of salary discrimination under Title VII, Tademe must show that SCSU paid different wages to employees of different races for "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." Sowell v. Alumina Ceramics, Inc., 251 F.3d 678, 682 (8th Cir. 2001) (Sowell) (quoting Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974) (Equal Pay Act)). See, e.g., EEOC v. Delight Wholesale Co., 73 F.2d 664, 669 (8th Cir. 1992) (holding that same standard applies to Equal Pay Act and Title VII wage-discrimination claims). Determining whether two jobs require equal skill, effort, or responsibility requires a practical judgment of all relevant facts and circumstances. Buettner v. Arch Coal Sales Co., 216 F.3d 707, 719 (8th Cir. 2000). Requisite skill is measured by such factors as education, training, experience, and ability. Id. In this case, Tademe compares his salary with that of Hoffman, a white colleague who, like Tademe, was hired in a probationary tenure-track position at approximately the same time. Although the record reflects that Hoffman was consistently paid more than Tademe, the record also shows Hoffman had a Ph.D. when she was hired as an associate professor and was therefore initially placed higher on the salary grid. Tademe, in contrast, was hired at the lower rank of assistant professor and did not receive his Ph.D. until 1997. Because it is undisputed that the education and background of the two professors were materially different, Tademe has failed to

---

[8]The Morgan Court noted that its holding does not address "the timely filing question with respect to 'pattern-or-practice' claims brought by private litigants." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 n.9 (2002).

establish a genuine dispute regarding his claim of race-based salary discrimination. We therefore affirm the district court's grant of summary judgment in favor of SCSU on Tademe's salary discrimination claim. See Saulsberry v. St. Mary's Univ. of Minn., 318 F.3d 862, 866 (8th Cir. 2003) ("We may affirm a district court's order, including an order granting summary judgment, on any basis supported by the record, even if that ground was not considered by the district court.") (quoting Viking Supply v. Nat'l Cart Co., 310 F.3d 1092, 1097 (8th Cir. 2002)).

## II. Hostile Work Environment

Tademe next argues that the district court erred in granting summary judgment in favor of SCSU on his hostile work environment claim. Tademe contends that there was ample evidence which would allow a jury to find there was a racially hostile work environment at SCSU. Tademe claims that the district court ignored affidavits from five other faculty members regarding the racially hostile environment at SCSU. Harassment of employees other than a plaintiff, he maintains, can be relevant to establishing an unlawfully hostile work environment. See Hawkins v. Hennepin Tech. Ctr., 900 F.2d 153, 156 (8th Cir. 1990). In addition, Tademe argues that he was humiliated when SCSU denied him promotions because he did not have a Ph.D. while other non-black faculty members without a doctoral degree were promoted and even made full professor. He claims that he was further humiliated by being called "incompetent" and by being paid less than other faculty members. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998) (a hostile work environment claim must consider evidence regarding the circumstances of plaintiff's employment, including whether the offending conduct was physically threatening or humiliating). Tademe also contends he was wrongly accused of unprofessional behavior, including allegations that he made sexual advances towards female students, and that SCSU created written records documenting these false allegations. Tademe argues that this court has held creating a paper file on an employee or making allegations of

-12-

misconduct without proper notice may be discriminatory.[9]  See Basset v. City of Minneapolis, 211 F.3d 1097, 1107 (8th Cir. 2000) (reversing summary judgment in favor of defendant where black employee presented evidence that she was targeted by her white supervisor from the beginning of her employment).  Based on this evidence, Tademe  contends that he has presented a *prima facie* case of a racially hostile work environment.

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individuals's race, color, religion, sex, or national origin." 42 U.S.C.§ 2000e-2(a)(1).  Harassment of an employee based on a prohibited factor (e.g., gender, race, religion) is thus barred by Title VII.  Palesch v. Missouri Comm'n on Human Rights, 233 F.3d 560, 566 (8th Cir. 2000) (Palesch).  Hostile work environment harassment occurs when "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  Bradley v. Widnall, 232 F.3d 626, 631 (8th Cir. 2000) (Bradley) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (Harris)).  In order to maintain a hostile work environment action, an employee must make a five-part showing that: (1) he or she belongs to a protected group; (2) he or she was subject to unwelcome harassment; (3) a causal nexus exists between the harassment and the protected group status; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take proper action.  Palesch, 233 F.3d at 566.

---

[9]Tademe refers to written memos sent to him by Dean Joane McKay regarding his alleged unprofessional behavior during a dispute with another faculty member over the use of a classroom.  See Appellant's Appendix at 74-76.

The district court held Tademe's hostile work environment claim was a continuing violation and was therefore not time barred. Slip op. at 13 (citing Hukkanen, 3 F.3d at 285; see also Morgan, 536 U.S. at 117 ("A hostile work environment claim is comprised of a series of separate acts that collectively constitute one 'unlawful employment action.'") (quoting 42 U.S.C. § 2000e-5(e)(1)). Nevertheless, the district court held that Tademe's hostile work environment claim failed as a matter of law. Slip op. at 16. We agree.

Although Tademe claims that SCSU opposed his hiring, objected to his salary, had his salary lowered, threatened him, and had him arrested, he presents no persuasive evidence that SCSU took those actions for racially discriminatory reasons. See id. at 19-20. The evidence shows beyond genuine dispute that the harassment stemmed from inter-departmental politics and personality conflicts. SCSU is therefore entitled to summary judgment on Tademe's hostile work environment claim. See Palesch, 233 F.3d at 567 (upholding summary judgment in favor of defendants where plaintiff failed to present evidence that her alleged mistreatment was due to her race or gender).

## III. Retaliation

Finally, Tademe argues that the district court erred in granting summary judgment in favor of SCSU on his claim that the university retaliated against him because he engaged in activities protected under Title VII.[10] Tademe claims that SCSU took adverse employment actions against him for opposing racism at SCSU, including denying his promotion to full professor and "papering" his file with false

---

[10]Under 42 U.S.C. § 2000e-3(a), protected activity is comprised of either: (1) opposition to employment practices prohibited under Title VII, and (2) filing a charge, testifying, assisting or participating in an investigation proceeding, or hearing convened according to Title VII.

allegations that he sexually harassed students and threatened or otherwise treated colleagues unprofessionally.

Under 42 U.S.C. § 2000e-3(a), it is unlawful for an employer to discriminate against an employee because he or she has opposed any action prohibited by Title VII. To establish a *prima facie* case of retaliation, a employee must show that: (1) he or she engaged in statutorily protected activity, (2) the employer took adverse action against him or her, and (3) a connection exists between the two occurrences. See Montandon v. Farmland Inds., Inc., 116 F.3d 355, 359 (8th Cir. 1997) (Montandon) (citations omitted). An adverse employment action is "exhibited by a *material* employment disadvantage, such as a change in salary, benefits, or responsibilities." Bradley, 232 F.3d at 632 (emphasis in original). Although "actions short of termination may constitute an adverse employment action within the meaning of the statute, 'not everything that makes an employee unhappy is an actionable adverse action.'" Manning v. Metropolitan Life Ins. Co., Inc., 127 F.3d 686, 692 (8th Cir. 1997) (Manning) (quoting Montandon, 116 F.3d at 359). This court has recognized, however, that actions that disadvantage or interfere with an employee's ability to do his or her job, as well as "papering" an employee's file with negative reports or reprimands, are sufficiently adverse to meet the Title VII standard for retaliation claims. See Cross v. Cleaver, 142 F.3d 1059, 1073 (8th Cir. 1998) (citing Kim v. Nash Finch Co., 123 F.3d 1046, 1060 (8th Cir. 1997)).

Tademe claims that SCSU took adverse action against him by failing to raise his salary after he complained. We agree with the district court, however, that the decision not to raise Tademe's salary was not an adverse employment action because Tademe's salary was not decreased or otherwise diminished in any way. See Ledergerber v. Stangler, 122 F.3d 1142, 1144-45 (8th Cir. 1997) (holding no adverse employment action where employee experienced no change in salary, benefits, or responsibilities). In fact, the record shows Tademe was granted tenure and received regular salary raises. See Bradley, 232 F.3d at 633 (upholding summary judgment in

favor of employer on retaliation claim where plaintiff continued to receive positive performance evaluations, pay raises, and bonuses). In other words, Tademe cannot show that he suffered any material employment disadvantage as a result of the challenged decision.

Tademe's claim that SCSU retaliated against him by "papering" his file with false allegations of unprofessional conduct similarly fails as a matter of law. Although Tademe contends that the allegations have had a negative impact on his ability to become a full professor, he has not shown that SCSU took any adverse action because of these accusations. See LaCroix v. Sears Roebuck, & Co., 240 F.3d 688, 692 (8th Cir. 2001) ("[A] negative review is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms and conditions of the recipients employment.") (citing Spears v. Missouri Dep't of Corrections & Human Resources, 210 F.3d 850, 854 (8th Cir. 2000)). While Tademe may have encountered hostility from or ostracism by his colleagues, he has not established that such actions had a material adverse effect on his working conditions. See Manning,127 F.3d at 692 (evidence of employer hostility, disrespect, and ostracism towards employees insufficient to demonstrate an "adverse employment action that constitutes the sort of ultimate employment decision intended to be actionable under Title VII"). We therefore agree with the district court that Tademe failed to present sufficient evidence to create a genuine issue of material fact on his retaliation claim.

CONCLUSION

Accordingly, the judgment of the district court is affirmed.

-16-

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.