Ruth E. **ROYAL**, Plaintiff,

v.

John E. **POTTER**, in his capacity as Postmaster General, U.S. Postal Service, Defendant.

No. CIV.A.2:04 1114.

United States District Court,
S.D. West Virginia,
Charleston Division.

Feb. 21, 2006.

Dwight J. Staples, Henderson Henderson & Staples, Huntington, WV, Kelly R. Curry, U.S. Attorney's Office, Charleston, WV, for Plaintiff.

Kelly R. Curry, Stephen M. Horn, U.S. Attorney's Office, Charleston, WV, Mary Ellen Krober, Philadelphia, PA, for Defendant.

## MEMORANDUM OPINION AND ORDER

CHAMBERS, District Judge.

On October 15, 2004, Ruth Royal filed this action alleging sex based discrimination in violation of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* She alleges a claim of sex discrimination and failure to promote in violation of Title VII, a retaliation claim, and a hostile work environment claim. On January 3, 2006, both parties filed memoranda in support of motions for summary judgment on the hostile

work environment claim (Doc. 67, 69). After reviewing the motions and hearing oral argument, the Court **DENIES** both motions for summary judgment.

## I. Standard of Review

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.;* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

## II. Summary of Facts

In deciding on summary judgment, the Court will view all facts and inferences in the light most favorable to Plaintiff. In September 1994, Plaintiff first filed a complaint with the Defendant's Equal Employment Opportunity Office (EEOC) alleging sex discrimination by her supervisor, Walter Brownlow. Plaintiff alleges that over a period of approximately seventeen months, she was intimidated and forced by Brownlow to engage in nonconsensual sexual intercourse with him on a weekly basis; in order to accommodate his requests, she had to take annual leave; and she was required to give him money and buy his lunch on a weekly basis. In addition, she claims that she suffered two tangible employment actions directly related to the harassment by Brownlow.

In February 1993, the Plaintiff was granted a 204–B step up assignment into a temporary supervisory position. In mid-April 1993, Brownlow indicated to the Plaintiff that the union had filed twelve grievances against her. Plaintiff alleges that Brownlow said he would take care of the grievances, and Plaintiff submitted to sexual advances. Plaintiff testified that she feared that if she did not submit to his advances, she would lose her job. The Plaintiff attempted to stop the sexual relations, but was told by Brownlow that she must not "want to prosper." On April 30, 1993, Brownlow removed Plaintiff from the 204–B supervisory assignment. This removal caused Plaintiff to earn less money and possibly damaged her future promotion chances. The plant manager, Harry Burch, testified that Brownlow had told him that Plaintiff was removed from the 204–B position due to poor performance.

In November 1993, the plaintiff applied for the position of supervisor of distribution operations. There were two positions available and three applicants. Brownlow was the only interviewing official. Plaintiff alleges that during the interview,

Brownlow asked her what color underwear she was wearing. Plaintiff claims she met the minimal qualifications, and tied with another applicant as the second most qualified person for the position. When Plaintiff asked Brownlow why she did not receive the position, he indicated that he did not promote people with whom he has sex.

## III. Analysis

■ In order to establish a claim for hostile work environment, a plaintiff must prove: (1) unwelcome conduct; (2) based on her sex; (3) sufficiently severe or pervasive to alter the conditions of employment thereby creating a hostile work environment; and (4) some basis for imputing liability to the employer. *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 266 (4th Cir.2001). The summary judgment motions essentially center upon the fourth element. The Defendant concedes for purposes of the motion that Plaintiff can show the existence of a hostile work environment, arguing only that Plaintiff is unable to prevail on the fourth element. Plaintiff disagrees.

### A. Tangible Employment Actions under *Morgan*

■ Both parties rely upon two alleged tangible employment actions, early termination of the 204–B position and the failure to promote, to argue that they are entitled to summary judgment based on the employer liability principles set forth by two cases decided on the same day with nearly identical holdings, *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). In *Ellerth*, the Supreme Court considered the extent of an employer's liability under Title VII for unlawful discrimination caused by the sexually harassing conduct of a supervisory employee. The Court ruled that the labels of "quid pro quo" and "hostile work environment" are "relevant" only when determining the threshold question of whether the plaintiff can prove sex discrimination in violation of Title VII. *See Ellerth*, 524 U.S. at 753, 118 S.Ct. 2257. However, once sex discrimination is assumed or found by the jury, the labels lose their significance, and principles of agency law become the controlling issues. *Id.* at 754, 118 S.Ct. 2257. The Court then examined what liability an employer has for the conduct of supervisors who engage in harassment.

■ The Court found that an employer will be held vicariously liable for the harassment of a supervisor with immediate authority over the employee if a tangible employment action occurred. *Id.* at 760, 118 S.Ct. 2257. The Court defined a tangible employment action as, "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 761, 118 S.Ct. 2257. The Court held,

> [w]hen a supervisor makes a tangible employment decision, there is assurance the injury could not have been inflicted absent the agency relation...As a general proposition, only a supervisor, or other person acting with the authority of the company can cause this sort of injury...Tangible employment actions fall within the special province of the supervisor...
>
> . . . . .
>
> For these reasons, a tangible employment action taken by the supervisor becomes for Title VII purposes the act of the employer.

*Id.* at 761–762, 118 S.Ct. 2257.

■ The Court reasoned further that when a supervisor's harassment does not

result in a tangible employment action, an employer may raise an affirmative defense to liability. *Id.* at 765, 118 S.Ct. 2257. The defense includes two necessary elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative corrective opportunities provided by the employer or to avoid harm otherwise." *Id.*

Relying upon *Ellerth* and *Faragher,* Plaintiff argues that she is entitled to summary judgment because she has suffered a tangible employment action due to harassment by Brownlow, her supervisor, for which the Defendant is vicariously liable. Defendant argues that he is entitled to summary judgment because the alleged tangible employment actions taken by Brownlow are time barred after Plaintiff failed to contact the EEOC office within the requisite 45 days. Therefore, the Defendant asserts the affirmative defense to avoid liability. Both parties support their respective positions by relying upon the case of *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)(Thomas, J.).[1] The Plaintiff claims that *Morgan* supports her position that tangible employment actions which occur during and as part of a hostile work environment are not time barred. In contrast, the Defendant claims that *Morgan* supports his position that

because Plaintiff failed to file an EEOC complaint within 45 days of the tangible employment actions, she cannot now use them to support the hostile work environment claim.

The United States Supreme Court in *Morgan* addressed the issue of whether acts that fall outside the statutory time period for filing as set forth by 42 U.S.C. § 2000e-5(e) are actionable under Title VII. *Id.* at 108, 122 S.Ct. 2061. The relevant filing provision under Title VII states: "A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred." § 2000e-5(e)(1). The plaintiff in *Morgan* alleged that he had been subjected to discrete discriminatory and retaliatory acts, and had experienced a racially hostile work environment throughout his employment. 536 U.S. at 104–105, 122 S.Ct. 2061. While some of the alleged acts occurred within 300 days from the time he filed his charge with the EEOC, many of them did not. *Id.* at 105–106, 122 S.Ct. 2061. The Court considered under what circumstances a plaintiff could file suit on events that occur outside the statutory time period. The answer depended upon the type of claim filed by the plaintiff. After carefully reviewing the statutory language, the Court in *Morgan* established separate principles for claims alleging discrete discriminatory acts and claims alleging hostile work environment. *See generally, id.* at 110–118, 122 S.Ct. 2061.

1. The Court notes that the *Morgan* decision applied the 180 or 300 day time period provided for filing a claim for a state or private employee under 42 U.S.C. § 2000e-5. The present case involves a claim by a federal employee which is governed by the 45 day filing provisions as laid out in § 1614.105(a)(1)("[a]n aggrieved person must initiate contact with a[n EEOC] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effec-

tive date of the action."). Although neither party raised the issue, the Court notes that the principles set forth in the *Morgan* case apply to the present case, even though the present case involves a different statutory scheme and filing time period. *See also, West v. Norton,* 376 F.Supp.2d 1105, 1120 (D.N.M.2004)(applying *Morgan* to determine if a claim by a federal employee was timely filed under § 1614.105(a)(1)); *Nurriddin v. Goldin,* 382 F.Supp.2d 79 (D.D.C.2005)(same).

As the Court explained, discrete acts include "termination, failure to promote, denial of transfer, or refusal to hire." *Id.* at 114, 122 S.Ct. 2061. Each separate incident of discrimination is actionable as an unlawful "practice." Therefore, the plaintiff must file with the EEOC within the statutory time period from the date of that incident. For example, if a plaintiff files a claim for a sex based violation of Title VII for failure to promote, she has 300 days from the decision denying the promotion to file with the EEOC. This means that if a plaintiff, like the one in *Morgan,* files a Title VII claim on day 302 alleging race discrimination for the acts of failure to promote on day 1 and failure to transfer on day 301, the plaintiff's claim for failure to promote is time barred. That was a discrete act of discrimination, occurring on day 1, which started the clock for filing a claim. That claim was lost after 300 days. The Court emphasized that this is the case "even when they are related to acts alleged in timely filed charges." *Id.* at 113, 122 S.Ct. 2061.

The Court distinguished Title VII claims for discrete acts from claims for hostile work environment. A hostile work environment claim by its "very nature involves repeated conduct." *Id.* at 115, 122 S.Ct. 2061. Unlike discrete acts, the unlawful practice "cannot be said to occur on any particular day." *Id.* Instead, the unlawful practice occurs "over a series of days or perhaps years." *Id.* The incidents comprising a hostile work environment often involve the "same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Id.* at 120, 122 S.Ct. 2061 (quoting the decision in this case by the Court of Ap-

peals, 232 F.3d 1008, 1017 (9th Cir.)). The Court interpreted the filing requirements for a hostile work environment claim as different from the filing requirement for a claim of a discrete act. As discussed above, the statutory language provides for the filing of a claim a certain number of days "after the alleged unlawful employment practice occurred." § 2000e–5(e)(1). A claim alleging a hostile work environment is "composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" 536 U.S. at 117, 122 S.Ct. 2061. Therefore,

> [t]he timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire period of the hostile work environment may be considered by a court for the purposes of determining liability.

*Id.* at 117, 122 S.Ct. 2061. A district court is given the task to "determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." *Id.* at 120, 122 S.Ct. 2061.

The *Morgan* decision does not expressly address the issue presented in this case, that is whether discrete acts of discrimination falling outside the relevant time period may be considered in holding the defendant vicariously liable for hostile work environment. Courts since *Morgan* have held that they can be considered.[2]

---

**2.** The Fourth Circuit has not yet ruled whether discrete acts of discrimination falling outside the relevant time period may be considered in holding the defendant liable. The

court has applied *Morgan* to cases involving either only discrete acts or only hostile work environment claims. *See, e.g., Szedlock v. Tenet,* 61 Fed.Appx. 88 (4th Cir.2003); *Wil-*

These acts can be considered not just as background evidence to the claim, but as conduct for which an employer is liable. *See Crowley v. L.L. Bean, Inc.,* 303 F.3d 387, 395–396 (1st Cir.2002)("Therefore, in the wake of *Morgan,* the jury not only could consider [the harasser's] conduct prior to [the statutory period] as 'relevant background evidence,' but also could hold [defendant] liable for the alleged acts of harassment that fell outside the 300–day period for filing an EEOC charge of sexual discrimination...") (citations omitted).

In *Mosley v. Bojangles' Restaurants,* the Middle District of North Carolina, in an unpublished opinion, discussed the discriminatory acts alleged by the plaintiff in relation to three Title VII claims, which included a claim for discrimination on the basis of race, retaliation, and hostile work environment. No. 1:03CV00050, 2004 WL 727033, at *1 (M.D.N.C. March 30, 2004). Plaintiff filed his claim with the EEOC on May 16, 2002. *Id.* at *3. Applying the principles of *Morgan,* the court held that plaintiff's claims of race discrimination and retaliation based on discrete acts occurring before November 17, 2001, the date 180 days before the filing of his claim with the EEOC, are time barred. *Id.* at *5. However, because at least one incident of harassment occurred on or after November 17, 2001, "these incidents are not time barred with respect to Plaintiff's claim that these incidents comprise a racially hostile work environment." *Id.* Accordingly, the court analyzed whether these otherwise discrete acts along with other evidence were so severe and pervasive as to alter the conditions of the plaintiff's employment. *Id.* at *10.

To illustrate the court's analysis, one of the discriminatory acts alleged by plaintiff was his transfer to another store after his complaint of race discrimination by his supervisor. *Id.* at *2. The transfer occurred during early September 2001. *Id.* Plaintiff alleged that the transfer was a discrete act of race discrimination, retaliation and contributed to the hostile work environment. *Id.* at *5. Plaintiff's separate claims of race discrimination and retaliation were time barred because he failed to file a charge within 180 days of the transfer. *Id.* However, this act was not time barred with regard to his claim of hostile work environment, and the court considered the transfer as one act that contributed to the hostile work environment. *Id.* at *10.

Similarly, the Eighth Circuit held that several of plaintiff's claims for discrete acts of discrimination were time barred, but those acts could be considered for the hostile work environment claim. *Tademe v. Saint Cloud State University,* 328 F.3d 982 (8th Cir.2003). The plaintiff brought claims under Title VII of race discrimination in tenure, promotion, salary, and hostile work environment. *Id.* at 984. Plaintiff first filed a claim with the EEOC on June 3, 1999. *Id.* at 985. As with the *Mosley* court, the Eighth Circuit first determined which claims were time barred. His claim of discrimination in tenure from 1996 and his claim of discrimination in promotion from early 1998 were both time

kinson v. Rumsfeld, 100 Fed.Appx. 155 (4th Cir.2004). In each of these cases, the Fourth Circuit discussed the holding in *Morgan* that actions under Title VII for discrete acts must be filed within the time period after the act, but that an action for hostile work environment is timely filed if one of the alleged acts occurs within the time period. *See, Szedlock,* 61 Fed.Appx. at 93 (plaintiff's claims of fail- ure to accommodate were time barred because "unless the plaintiff alleges a hostile work environment (which Szedlock did not do), each instance of discrimination is a discrete act"); *Wilkinson,* 100 Fed.Appx. at 158 (plaintiff's hostile work environment claim was not time barred as long as one component incident took place within the time period).

barred for failure to file within the requisite number of days. *Id.* at 988. The court found that the claim for discrimination in salary was timely because it was within 300 days of receiving an allegedly discriminatory check. *Id.* at 989. Even though some of the plaintiff's claims of discrimination involving these discrete acts were time barred, the court considered these actions in determining liability for the hostile work environment claim. *Id.* at 991. Although ultimately concluding his claim failed as a matter of law, the court considered the alleged discriminatory discrete acts including a lower salary and objection to his salary. *Id.*

The Ninth Circuit interpreted *Morgan* differently from either the *Mosley* or *Tademe* courts. *See Porter v. California Dep't of Corrections*, 419 F.3d 885 (2005). The Ninth Circuit interpreted *Morgan* as creating a strict dichotomy between discrete acts and a hostile work environment. *Id.* at 892. In this case, the plaintiff filed an EEOC complaint on April 21, 1999. She alleged various sexually offensive activities occurring between 1995 and 2001 at the hands of two different harassers. Generally, plaintiff alleged harassing conduct from 1995 to 1996, and then subsequent reprisal for resisting the advances in 1997 to 1998 and one incident in 2001. The court ultimately held that her hostile work environment claim was not time barred. The court noted that it would be "tempting to conclude that all the offensive activities that [the plaintiff] allegedly encountered between 1995 and 2001 are both timely and actionable as different 'part[s] of the same unlawful employment practice.'" *Id.* at 892. However, the court stated that "we believe that such an approach would blur to the point of oblivion the dichotomy between discrete acts and a hostile work environment." *Id.*

The Ninth Circuit refused to mix the more recent discrete acts of reprisal alleged by plaintiff with the alleged past harassing sexual conduct. *Id.* The court held instead, that if the plaintiff alleges a hostile work environment, an actionable claim must be based only upon "timely non-discrete acts." *Id.* In so holding, the court completely separated all of the alleged discriminatory conduct into discrete acts versus non-discrete acts. The court then ignored all of the discrete acts in their analysis, even the discrete act occurring within the 300 day statutory time period.[3] As an initial consideration, the court only looked at the non-discrete acts occurring within the 300 day period. If those acts support a claim of hostile work environment, then the court would turn to non-discrete acts falling outside of the time period. In determining whether all of the non-discrete acts constituted one unlawful practice, the court considered "whether the later and earlier events amounted to 'the same type of employment actions, occurred relatively frequently, [or] were perpetrated by the same managers.'" *Id.* (quoting *Morgan*, 536 U.S. at 120, 122 S.Ct. 2061). The court ultimately concluded that the plaintiff provided sufficient evidence of non-discrete acts to show that the earlier events (occurring before the statutory period) involved the same type of activity as the later events (occurring within the statutory period).

This Court is not persuaded by the Ninth Circuit's application of *Morgan*. By initially examining only non-discrete acts

---

**3.** The court presumably believed that discrete acts occurring within the time period remain relevant for determining liability. In remanding the case back to the district court to conduct proceedings upon the hostile work environment claim, the court noted that "we express no opinion as to whether the [employer] may avail itself of the affirmative defense outlined by the Supreme Court in *Faragher*." *Porter*, 419 F.3d at 894.

occurring within the statutory time period, the *Porter* court fails to appreciate *Morgan*'s explanation of a hostile work environment. As *Morgan* discussed, a hostile work environment claim by its "very nature involves repeated conduct" and as one "'unlawful employment practice'.... cannot be said to occur on any particular day." *See* 536 U.S. at 115, 122 S.Ct. 2061. Instead the unlawful practice "occurs over a series of days or perhaps years." *Id.* Because of the nature of the claim, the Supreme Court held that as long as one act that contributes to the claim falls within the statutory period, the entire time period may be considered in determining liability. *Id.* at 117–118, 122 S.Ct. 2061. The Ninth Circuit did not acknowledge this particular holding of *Morgan*. Although the *Porter* court ultimately reached the conclusion that the non-discrete acts occurring during the entire alleged period, from 1995 to 2001, may be considered in determining liability, this Court disagrees with the analytical process.

In addition, this Court does not read the *Morgan* decision as eliminating discrete acts from consideration in determining hostile work environment claims with non-discrete acts. The *Morgan* opinion does not command district courts to literally divide the alleged discriminatory acts into two separate lists, one for discrete and one for non-discrete, as done by the Ninth Circuit. Instead, the *Morgan* opinion reinforces the two types of claims brought under Title VII as different unlawful practices and discusses how the statutory filing language applies to both. A discrete act is an "unlawful employment practice" under the statutory provision, and therefore triggers the time period to file from the date that the "practice" occurred. *See id.* at 113, 122 S.Ct. 2061. A plaintiff claiming discrimination under Title VII based only upon that discrete act must file within the time period. The Supreme Court also

clarified that there is no indication under Title VII that "the term 'practice' converts related discrete acts into a single lawful practice for the purposes of timely filing." *Id.* at 111, 122 S.Ct. 2061. Therefore, a plaintiff could not bring a clam under Title VII for separate discrete acts unless timely filed even if, for example, they involved the same actor or similar circumstances.

On the other hand, a plaintiff claiming discrimination under Title VII for a hostile work environment cannot point to a specific date when the "unlawful employment practice" occurred. These claims "are based on the cumulative effect of individual acts," and unlike a discrete act "a single act of harassment *may* not be actionable on its own." *Id.* at 115, 122 S.Ct. 2061 (emphasis added). Contrary to the analysis employed by the Ninth Circuit, the *Morgan* Court did not decide that only acts that are not actionable on their own constitute a hostile work environment claim. It is the "series of separate acts that collectively constitute one 'unlawful employment practice.'" *Id.* at 117, 122 S.Ct. 2061. The Court then explained:

It is precisely because the entire hostile work environment encompasses a single unlawful employment practice that we do not hold, as some of the Circuits, that the plaintiff may not base a suit on individual acts that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on such conduct. *The statute does not separate individual acts that are part of the hostile environment claim from the whole for the purposes of timely filing and liability.* And the statute does not contain a requirement that the employee file a charge prior to 180 or 300 days "after" the single unlawful practice "occurred." Given, therefore, that the incidents constituting a hostile

work environment are part of one lawful employment practice, the employer may be liable for *all acts that are part of this single claim.*

*Id.* at 117–118, 122 S.Ct. 2061 (emphasis added). The Supreme Court explicitly rejected the argument that the filing requirements under Title VII are somehow related to issues of notice of discrimination. The Court refused to eliminate liability for hostile work environment conduct occurring outside the time period even though the plaintiff may have been able to raise the claim earlier. *See id.* at 117 n. 11, 122 S.Ct. 2061 (rejecting test proposed by employer that "recovery for conduct taking place outside the time period for filing a timely charge should be available only in hostile environment cases where the plaintiff reasonably did not know such conduct was discriminatory or where the discriminatory nature of such conduct is recognized as discriminatory only in light of later events.") Justice Thomas carefully analyzed the language of Title VII and differentiated the filing requirements between a claim for a discrete act and a claim for hostile work environment based upon the meaning of "unlawful employment practice." Therefore, a district court's duty under *Morgan* is to determine whether the plaintiff has provided evidence of an actionable hostile work environment which may include an otherwise discrete act or has made a claim for hostile work environment when in actuality the plaintiff is attempting to recover on time barred discrete acts.

This principle is underscored in *Nurriddin v. Goldin,* 382 F.Supp.2d 79 (D.D.C. 2005). In this case, the plaintiff brought multiple claims under Title VII alleging discrimination based on race, sex, and religion, as well as retaliation and hostile work environment. *Id.* at 90. The court first held that multiple claims, involving failure to promote, receiving a lower performance rating, and being assigned responsibilities not faced by an employee of his level, were time barred because they were discrete acts of discrimination, and plaintiff failed to file with the EEOC. *Id.* at 92–93. Of the timely filed claims, the court found that the plaintiff failed to establish a prima facie case of discrimination. *See id.* at 93–107.

Turning to the hostile work environment claim, the court noted that the list of numerous acts that constitute the hostile environment included many of the discrete acts which failed to support a claim of discrimination under Title VII. *Id.* at 107. The court did not hold that discrete acts can never be part of a hostile work environment claim. However, the court held that in this case, "the bulk of the 'hostile' events on which plaintiff relies are the very employment actions he claims are discriminatory or retaliatory; he cannot so easily bootstrap discriminatory claims into a hostile work environment claim." *Id.* at 108. Accordingly, the court granted summary judgment.

Using similar analysis, the court in *Coudert v. Janney Montgomery Scott, LLC* held that a plaintiff's hostile work environment claim failed in part because the claim was composed of five discrete acts over a period of five years. No. 3:03CV324(MRK), 2005 WL 1563325, *10 (D.Conn. July 1, 2005). The court previously ruled that the Plaintiff was unable to recover for these discrete acts under Title VII. *Id.* at *6–7. The court did consider these acts in her hostile work environment claim. *Id.* at *10. In discussing that claim, the court cited *Morgan* as recognizing that in "certain circumstances, a series of discrete events spread over a long period of time could not be considered a single unlawful hostile work environment practice." *Id.* at *7. The five acts the court

considered were the denial of a private office, denial of an aide, one incident of verbal abuse not overtly discriminatory, and her reduced commission. *Id.* at *10.

The court noted that "[t]he five alleged incidents of disparate treatment offered in support of her hostile work environment claim are not what normally is considered harassing 'offensive conduct' on the basis of age or sex." *Id.* at *11. Although the court's grant of summary judgment is based primarily on the determination that plaintiff did not present evidence that these discrete acts were because of her sex or age, the court's ruling implicitly recognizes that a plaintiff must provide evidence of the hostile work environment. It was not enough for the plaintiff to argue that a series of discrete acts over five years, even if related, constituted the hostile environment. Plaintiff failed to show that they were part of a single "unlawful employment practice."

■ From *Morgan* and cases applying *Morgan,* a few principles are clear. First, discrete acts, including discriminatory and retaliatory acts, which may have been actionable on their own under Title VII, may still be considered in holding an employer liable for hostile work environment. This is true even for discrete acts that occurred outside of the statutory time period for filing a complaint. Second, when a plaintiff brings a claim for hostile work environment and supports that claim with acts that could be considered discrete acts, the court must review the evidence to make sure that the plaintiff is not attempting to allege a hostile work environment claim based only upon the separate discrete acts. A plaintiff cannot avoid the statutory filing requirements and the holding of *Morgan* by claiming that the

discrete acts themselves give rise to the hostile work environment. A court must follow the guidance of *Morgan* and determine "whether the acts about which an employee complains are part of the same actionable hostile work environment practice." 536 U.S. at 120, 122 S.Ct. 2061.

■ Applying *Morgan* to the facts of this case, the Court finds Plaintiff has alleged sufficient facts for an actionable hostile work environment. For the purposes of these motions only, the Defendant did not dispute that Plaintiff can demonstrate that she suffered discrimination based upon hostile work environment. Because at least one of the alleged acts contributing to the claim occurred within the filing period, the entire time period of the alleged hostile work environment may be considered by the Court. Looking at the facts alleged, Plaintiff claims that she was forced to submit to unwanted sexual contact with her supervisor, Brownlow, on a weekly basis for over a year. In order to meet his sexual demands, the Plaintiff had to use some of her annual leave. She also alleges that she was forced to buy Brownlow lunch or give him money on a weekly basis. Plaintiff alleges harassing conduct that occurred frequently and at the hands of the same supervisor.

Within that period as well, Plaintiff alleges at least two tangible employment actions:[4] Plaintiff's early termination of the 204–B temporary position and the failure to promote Plaintiff to one of the two available positions. Both acts were direct decisions by Brownlow. The Defendant conceded that, if timely and if proven, a discriminatory failure to promote would be a tangible employment action. In regards to the termination of the 204–B position,

---

**4.** At oral argument, Plaintiff's counsel also suggested that the fact that Plaintiff was forced to take annual leave, a job benefit, in order to meet the sexual demands of Brownlow qualified as another tangible employment action.

Plaintiff has provided evidence that she was removed from this position by Brownlow, the alleged harassing supervisor. According to the testimony of Harry Burch, plant manager, this removal caused Plaintiff to earn less pay, and would probably decrease the future possibility of placing her in a supervisory position again. Plaintiff has provided sufficient evidence to suggest that these acts were discriminatory tangible employment actions contributing to the hostile work environment.

Because these acts occurred within the single "unlawful employment practice," they are not time barred discrete acts. Plaintiff did not need to file an EEOC complaint within 45 days of these acts "occurring" because these are just two of the alleged "separate acts that collectively constitute one 'unlawful employment practice.'" *Morgan*, 536 U.S. at 117, 122 S.Ct. 2061. This is not a case where the Plaintiff is alleging a hostile work environment claim based only upon the two tangible employment actions. Instead, these two employment acts are part of the same actionable hostile work environment based on allegations of sexual demands and other incidents involving the same supervisor. Therefore, if proven true, they may be considered in holding the employer vicariously liable for hostile work environment.

### B. Tangible Employment Action under *Jin*

Even if the demotion and lack of promotion were time barred discrete acts under *Morgan*, the Plaintiff may still be able to prove she suffered a tangible employment action under the theory as announced by the Second Circuit in the case *Jin v. Metropolitan Life Ins. Co.*, 310 F.3d 84 (2d Cir.2002). The court in *Jin* held that the jury should have been allowed to consider as a tangible employment action evidence that the supervisor based decisions affecting the terms and conditions of a subordinate's employment on the submission to sexual abuse. *Id.* at 98. The plaintiff alleged that over a period of approximately thirteen months, she was subjected to repeated sexual abuse ranging from crude sexual remarks to offensive touching to weekly nighttime private meetings where her supervisor forced her to engage in sexual acts. *Id.* at 88–89. Importantly, plaintiff offered evidence that the supervisor repeatedly threatened to fire her if she did not comply with his sexual demands. *Id.*

Upon these facts of sexual abuse and the explicit threats to end plaintiff's employment, the court found that the supervisor "used his authority to impose on her the added job requirement that she submit to weekly sexual abuse in order to retain her employment." *Id.* at 94. The supervisor was essentially using plaintiff's submission to the sexual acts as the basis for granting her a job benefit. *Id. at* 97. That job benefit was her continued employment. *Id.* In rejecting the defendant's arguments that to recover for a tangible employment action the plaintiff must suffer some economic harm, the court noted that "[i]t would be anomalous to find an employer liable when an employee was able to stand up to a supervisor's sexual demands, and therefore provoke an action such as termination, but to find no liability when the employee was unable to refuse and was actually subjected to sexual abuse." *Id.* at 99. Accordingly, the court held that the jury should have been instructed to consider the conditioning of her continued employment on her submission as a possible tangible employment action. *Id.* at 98.

The Ninth Circuit ruled likewise in a case with similar facts as *Jin. See Holly D. v. California Institute of Technology*, 339 F.3d 1158 (9th Cir.2003). The plaintiff alleged that for over a year she was forced

to engage in sexual relations with her supervisor with the implication that her continued employment depended on her complying with his demands. *Id.* at 1162. Although she never suffered economic harm, plaintiff contended that there were indications and implications that her employment depended on her submission. *Id.* The Ninth Circuit joined the Second Circuit in holding that when "the victim submits to her supervisor's demands and is hired, promoted, not fired, or not demoted *because* she has been successfully coerced into engaging in sexual acts with him, she is also directly injured by the employment action. The injury in such cases-the physical and emotional damage resulting from performance of unwanted sexual acts as a condition of employment-is as tangible as an injury can be." *Id.* at 1171 (emphasis in original).

In order to prevail on a claim of this nature, a plaintiff need not prove that the supervisor explicitly demanded sex in return for continued employment. *Id.* at 1173. As the court stated, "[s]uch a claim may lie either with continued employment has been expressly conditioned on participation in sexual acts or when the supervisor's words or conduct would communicate to a reasonable woman in the employee's position that such participation is a condition of employment." *Id.* The court ultimately ruled that the plaintiff failed to produce any evidence of either explicit or implicit conditioning of her employment status upon her submission to sexual demands. *Id.* at 1175. No evidence connected a potential change in her employment status or any other job-related matters with her supervisor's request to engage in sexual acts. *Id.*

 In this case, Plaintiff has submitted adequate evidence to create an issue of fact as to whether her supervisor explicitly or implicitly conditioned her employment status upon her submission to his sexual demands. She has alleged that after she was granted the 204–B temporary supervisory position, Brownlow told her that the union had filed twelve grievances against her. Brownlow assured plaintiff that he would take care of her and referred to himself as "Big Daddy." Upon reassurance that he would take care of the grievances, Plaintiff submitted to his sexual requests approximately once a week. Plaintiff testified that she felt that Brownlow could fire her for the grievances. She also claims that when she tried to stop the alleged harassment, Brownlow made comments such as "I'll throw you to the wolves" and "you don't want to prosper." Making all inferences in favor of the Plaintiff, these comments suggest that her employment status was related to her submission to his sexual demands.

This evidence raises an issue as to whether Brownlow explicitly or implicitly conditioned her continued employment, which included him not acting upon the grievances, upon her submission to his sexual demands. Under the reasoning of *Jin,* the conditioning of Plaintiff's employment status upon submission was a tangible employment action. Accordingly, if Plaintiff can prove this conditioning, Defendant may be held vicariously liable for the hostile work environment.

## IV. Conclusion

Given the factual dispute between the parties as to whether Plaintiff can prove a hostile work environment, the Court does not grant either motion for summary judgment. However, in denying both motions, the Court does find that if Plaintiff provides sufficient evidence of a hostile work environment including the alleged tangible employment actions, Defendant will be held vicariously liable. Accordingly, Plaintiff's motion for summary judgment (Doc.

66, 67) is **DENIED** and Defendant's motion for summary judgment is **DENIED** (Doc. 68,69). The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.